## THE MALTINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6180. Promulgated December 19, 1945.

*Edward S. Bentley, Esq.*, for the petitioner.
*Laurence F. Casey, Esq.*, for the respondent.

**OPINION.**

KERN, *Judge*: The petitioner urges that the decision of the Board of Tax Appeals in *Maltine Co.* v. *Commissioner*, Docket Nos. 2805 and 3967, promulgated February 18, 1927, and reported at 6 B. T. A. 153, makes the issues involved here *res judicata*.

The respondent points out that the issues are different, different revenue acts apply, and, specifically, that the basic questions here, whether the intangible assets were acquired within the meaning of the statute so as to be an allowable component of invested capital, and the value of such intangibles, were not raised, litigated, or determined in the prior decision.

We agree with the respondent. The basic issue before the Board in the earlier case was whether the 1898 transaction was a purchase by petitioner of the capital stock of the manufacturing company, or of its assets, a distinction which was important under the then effective statute. No one suggested then that the transaction should be ignored for tax purposes, the question being limited to the construction thereof. The question here is not what the character of the transaction was, but whether it should be entirely disregarded for the purpose of computing invested capital under a statute materially different from the one in effect when the earlier decision was rendered. The issues are different and different tax statutes and years are involved. We must therefore conclude that the doctrine of *res judicata* is not applicable. See *Reynard Corporation*, 37 B. T. A. 552; *Susanna Bixby Bryant*, 2 T. C. 789; *Pelham Hall Co.* v. *Hassett*, 147 Fed. (2d) 63.

The petitioner's contention on the merits here is that it is entitled to include in its computation of its equity invested capital, under the provisions of section 718 (a) (2) of the Internal Revenue Code, the assets of Maltine Manufacturing Co. acquired by it in 1898, in consideration of the issuance of its capital stock, in an amount equal to its unadjusted basis for determining loss upon a sale or exchange; that its basis as to these assets was cost; and that its cost was $1,134,-926.34, which was the net worth of the property paid in for its stock, under Regulations 112, section 35.718–1.

Respondent argues that the formation of a new corporate entity in 1898 by the stockholders of an existing corporation and the acquisition by the new corporation of the assets of the old corporation in exchange for the issuance of the capital stock of the new corporation do not entitle the new corporation to the use for this purpose of the cost to it of the property so acquired in excess of the original investment in the old corporation. Respondent regards such a transaction as no more than a "write up" of good will and the declaration of a stock dividend.

There is no dispute about the facts of the 1898 transaction. The Maltine Manufacturing Co. had been operating with outstanding success for several years, having paid dividends for six successive years equal to a 100 percent return on the original investment, which was $100,000. It operated under a charter which limited its activities to "the manufacture and sale of a medical preparation known as Maltine and its compounds in the City and County of New York."

In 1897 petitioner was incorporated with a capital of $1,000,000, for the purpose of acquiring the assets and business of the manufacturing company. Its corporate purpose was the making and selling of medicinal and food products and its activities were not confined to any particular locality.

The Maltine Manufacturing Co. had four stockholders. Three of them became the incorporators and original stockholders of petitioner, but almost immediately, on the same date, at least, the stockholdings were so adjusted that the four stockholders of the manufacturing company held stock in petitioner in the same proportion, at the ratio of ten for one, of their holdings in the manufacturing company.

Petitioner took over the assets and the operation of the business, added new products to its line at various times, and continued its highly successful operation to the present time.

There seems to be no serious doubt that if the transaction had occurred in later years it would have qualified as a tax-free reorganization, and in that case petitioner would be required to use its transferor's base for the purpose under discussion. The immediate question here,

then, is whether the fact that the transaction occurred in 1898 leads to a different result.

Section 718 (a) (2) of the code provides that property acquired for stock shall be included in the computation of equity invested capital at an amount equal to its basis (unadjusted) for determining loss upon a sale or exchange.

Section 113 (a) of the code provides: "Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that * * *."

There follow twenty-two exceptions to this basic rule, of which none is claimed by respondent to be applicable to the present situation. Consequently, we conclude that the petitioner's basis of the property involved here for determining loss upon a sale or exchange is cost.

One of the exceptions, found at section 113 (a) (6), relates to property acquired in a tax-free exchange after February 28, 1913. It does not provide, however, for an exception where property is acquired before that date in an exchange of a character which would have been tax-free had it occurred thereafter.

Section 113 (a) (7) provides an exception where property was acquired after December 31, 1917, by a corporation in a reorganization.

Section 113 (a) (8) provides an exception where property was acquired after December 31, 1920, by a corporation by the issuance of stock or securities, or as a paid-in surplus, or contribution to capital.

Section 113 (a) (14) provides an exception in basis for determining *gain* on property acquired before March 1, 1913. It is silent as to basis for determining loss and respondent's regulations (Regulations 111, sec. 29.113 (a) (14)–1) explicitly recognize that fact.

These exceptions, which do not apply here, are examined because they indicate the degree of precision with which the statute provides for the varying situations for which Congress intended to make special exceptions. The inevitable conclusion is that it meant exactly what it said when it said that the basis, except for the several special situations thereafter specifically set forth, should be cost. To hold petitioner's basis for determining loss to be other than cost would be to create another exception, which we conceive to be properly the task of Congress if it is to be done.

There now arises the question of the valuation of the assets acquired by petitioner as outlined above. The regulations (sec. 35.718–1 of Regulations 112) provide:

\*   \*   \*   \*   \*   \*   \*

If the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance. If the stock had no established market value at the time of the exchange, the fair market value of the assets of the company at that time should be determined

and the liabilities deducted. The resulting net worth will be deemed to represent the total value of the outstanding stock. In determining net worth for the purpose of fixing the fair market value of the stock at the time of the exchange, the property paid in for such stock shall be included in the assets at its fair market value at that time.

If stock having no established market value is issued for intangible property, and it is necessary to determine the fair market value of such property, the following factors, among others, may be taken into consideration in determining such value: (a) The earnings attributable to such intangible assets while in the hands of the predecessor owner; and (b) any cash offers for the purchase of the business, including the intangible property, at or about the time of its acquisition * * *

There is no dispute concerning the net value of the tangible property, which is $134,926.34. Our inquiry is limited to the value of the intangibles, which petitioner contends was $1,000,000. The respondent contends they were worth considerably less, although he concedes they were valuable, and that a substantial portion of the earnings was fairly attributable thereto.

Of the two factors suggested by the regulations as proper for consideration, among others, there is no evidence here of any cash offers for the business. Respondent offered in evidence the earnings record of the old manufacturing company and computed the value of the intangibles, by the application of the formula proposed by A. R. M. 34, 2 C. B. 31, on the basis of an 8 percent return on tangibles, and capitalizing the remainder at 15 percent. The result was $506,521.

Petitioner objects to the use of A. R. M. 34, on the ground that it has no application here; and it contends that if Docket Nos. 2805 and 3967 are not *res judicata*, the findings of the Board therein, containing the finding that the value of the manufacturing company's stock was in excess of $1,000,000, represented largely by intangibles, are at least *prima facie* correct, and that there is sufficient evidence in the record here to support petitioner's valuation of $1,000,000 for the intangibles.

With respect to petitioner's contention that A. R. M. 34 has no application, it is noted that that memorandum provides within itself that, while its suggestions "may be utilized broadly in passing upon questions of valuation," they are "not to be regarded as controlling, however, if better evidence is presented in any specific case." We think there is presently before us sufficient evidence to obviate the necessity of resorting exclusively to A. R. M. 34.

There can be no doubt that the intangibles have been shown to have had substantial value. They were set up on petitioner's books at $1,000,000 at the time of their acquisition. The earnings of the predecessor company averaged $110,000 per year for the last five years of its operation, and dividends were declared in each of those years

amounting to 100 percent return on the original capital. The sale of stock nearest in point of time to the critical date was on November 30, 1901, when 100 shares of petitioner's stock were sold for $120 per share. No sales have ever occurred for less than par. The president of the company testified that in his opinion the good will of the business was worth at least $1,000,000 as of January 8, 1898. The principal product of the company is adaptable for use with almost all medicines and drugs and the demand for it is continuous and stable. It does not depend for its sales on advertising to the public.

Considering all the facts, and the pertinent criteria of value, we conclude that the fair market value of the intangible assets acquired by petitioner in 1898 in exchange for its capital stock was $866,000.

The final contention which we must consider is advanced by respondent in his brief. He suggests that petitioner has not proved that there were not other adjustments in reduction of invested capital which might result in an invested capital credit less in amount than the average earnings credit allowed by respondent, and that without proof of all the items making up its invested capital, whether questioned by respondent or not, we can not say he erred in allowing an average earnings credit rather than an invested capital credit.

No other factors involved in invested capital were mentioned in connection with this case except those which we have discussed above.

The notice of deficiency contained the following explanatory statement:

It is held that since you were organized in 1898 to take over the assets and business of The Maltine Manufacturing Company and issued therefor all your stock consisting of $1,000,000 par value, which was distributed to the stockholders of the old company in exchange for their stock, the increased value of the assets so acquired does not constitute a part of equity invested capital within the meaning of section 718 of the Internal Revenue Code and the alleged value of $1,000,000 claimed for good will at that time has therefore been eliminated from equity invested capital. As the elimination of the write-up in good will from your equity invested capital caused the excess profits credit computed on the invested capital basis to be less than the credit computed on the average earnings basis, the latter basis has been used in the computation of your excess profits tax liability.

Petitioner assigned as error the respondent's action in:

(1) Refusing to include in petitioner's equity invested capital $1,134,926.34 representing the value of the assets acquired on January 8, 1898, in consideration of the issuance of its capital stock;

(2) In holding the value of such assets to be less than $1,134,926.34;

(3) In holding the value of the intangible assets so acquired to be less than $1,000.000;

(4) In refusing to be bound by a prior decision of the Board of Tax Appeals involving the same questions;

(5) In refusing petitioner the right to use the value of the assets at the time of acquisition in computing its equity invested capital;

(6) In eliminating from its equity invested capital the sum of $1,000,000 representing the value of intangibles so acquired;

(7) In determining petitioner's excess profits tax credit to be $74,488.33 instead of $119,037.46 as claimed;

(8) In determining petitioner's excess profits tax credit on an income basis instead of on an invested capital basis;

(9) In holding petitioner subject to an excess profits tax for the year ended December 31, 1942.

The respondent's answer admitted the formal allegations of the petition relating to the incorporation of petitioner, the mailing of the notice of deficiency, and the filing of the petitioner's tax returns, and that the tax in controversy is a deficiency of $49,394.43 in excess profits tax for 1942; that petitioner acquired the assets in question in consideration of the issuance of its capital stock having an aggregate par value of $1,000,000 and that the tangible assets acquired had a value of $134,926.34; that respondent refused to be bound by the earlier decision, which petitioner contended was *res judicata*, and held the petitioner was not entitled to include in its equity invested capital the sum of $1,000,000 representing the intangible assets, but could include only the sum of $100,000, and inasmuch as a computation of petitioner's excess profits tax computed on such basis was less than when computed on an average earnings basis, the average earnings basis should be adopted. The answer denied all the assignments of error, denied that the determination of the deficiency resulted in the allowance of an overassessment of income tax in the amount of $21,779.88 which will be adjusted under Rule 50; denied that the intangible assets were of the value of $1,000,000; denied the allegations of fact concerning the prior decision of the Board; and denied generally all allegations not specifically admitted.

The only factor entering into petitioner's computation of the invested capital credit claimed by it in its return which the respondent questioned and disallowed and which is in issue here was the inclusion in equity invested capital of the value of the assets acquired in 1898 in exchange for the issuance of its capital stock. There is nothing in the deficiency notice or in the pleadings which would suggest the other questions raised by respondent in his brief, and, therefore, we can not consider them. See *Warner G. Baird*, 42 B. T. A. 970, and *Robert C. Coffey*, 21 B. T. A. 1242, 1245.

Reviewed by the Court.

*Decision will be entered under Rule 50.*