Arthur M. Scully and Mary Julia Crocker Scully v. Commissioner.
Scully v. Commissioner
Docket No. 9072.
United States Tax Court
1947 Tax Ct. Memo LEXIS 313; 6 T.C.M. (CCH) 131; T.C.M. (RIA) 47029; February 11, 1947
Wm. W. Booth, Esq., and Thomas J. McManus, *314 Esq., 747 Union Trust Bldg., Pittsburgh, Pa., for the petitioners. Homer F. Benson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in the income tax and victory tax liability of petitioners for the taxable year 1943 in the amount of $5,081.97. Petitioners, husband and wife, filed a joint return. Several minor adjustments are not contested by petitioners. The sole question is whether losses resulting from sales of rental real estate in 1942 and 1943 owned by the wife was a capital loss or ordinary loss. Because of the "forgiveness" feature provided by section 6 of the Current Tax Payment Act of 1943, relating to tax for 1942 and 1943, only the tax liability for the year 1943 is presented for decision. The issue, nevertheless, relates to deductions for losses sustained in 1942 and 1943. Petitioners contend that they have overpaid tax for the taxable period involved. Petitioners filed their return with the collector for the twenty-third district of Pennsylvania. Findings of Fact The facts which have been stipulated are incorporated herein by reference as part of the findings of fact. *315 Petitioners are husband and wife. Hereinafter Mary Julia Crocker Scully will be referred to as the petitioner. Petitioner is the daughter of Mary Ives Crocker who died on June 26, 1929, domiciled in California. By will, the decedent devised the residue of her estate in five equal shares; a one-fifth part to Henry J. Crocker, a one-fifth part to petitioner; a one-fifth part to Marian Phyllis Crocker; a one-fifth part to her executors and trustees in trust for Mary Virginia Scually; and the remaining one-fifth part to her executors and trustees in trust for Clark William Crocker. The principal assets of the decedent's estate consisted of 66 parcels of real estate and 45 mineral rights of the value of $1,898,862.82. The real estate holdings consisted of more than 9,000 acres of agricultural and grazing lands, all of which are located in California. During her lifetime the decedent maintained an office in San Francisco for the purpose of renting and managing the real estate. All of her real estate holdings, with the exception of her personal residence, were either rented by her or held for rental. On September 25, 1930, the Superior Court of California ordered "that the executors *316 [of the estate of decedent] be and they are hereby authorized to continue the business of the estate, including the maintenance of the office thereof * * * in * * * San Francisco." Most of the lands owned by the decedent at the time of her death were agricultural and grazing lands. She also owned a three story and basement apartment building, containing 27 apartments, located in San Francisco. At the time of her death, the agricultural and grazing lands were under lease to 95 tenants. The leases were for the one year period October 1, 1928 to September 30, 1929, conforming to the crop year of the farmer. Rentals of $74,492.24 were received from the leases for the one year period ending September 30, 1929. A rental of $7,600 was received from the lease of the apartment house for the year 1929. Decedent employed two men and a woman; the woman as secretary and bookkeeper, one man as field manager with headquarters at Stockton, California, and the other as the general manager of her affairs. All the employees were continued in the employ of the estate after the decedent's death. The field manager died in July 1937. The other two employees are still employed by the executors. *317 Since the death of the decedent her executors have, pursuant to order of the Superior Court, continued the renting and managing of the real estate and have continuously maintained an office in San Francisco. Decedent's estate has received the following gross rentals for the period June 7, 1929 to December 1, 1943: Year
Rentals
June 27, 1929, to December 31, 1930
$106,210.88
1931
62,552.86
1932
44,356.31
1933
58,140.57
1934
59,314.67
1935
47,336.18
1936
63,761.29
1937
47,850.58
1938
49,280.09
1939
43,897.56
1940
32,831.35
1941
27,980.80
1942
22,934.07
1943
22,548.09
Total
$688,995.29
During the period June 27, 1929 to December 31, 1942, the estate sold 69 parcels of real estate as follows: Amount
Real Estate
Parcels
Acres
Realized
Government Subdivi-
sion
62
25,977.73
$329,688.08
Rancho Canade de
os Vaqueros
1
19,232.69
384,017.08
Cloverdale Ranch
1
722.15
8,576.38
Stockton Ranch
1
.152
650.00
Union Island
1
56.17
2,316.15
Apartment House,
Market and Guer-
rero Streets
1
$ 44,087.04
Rowardennan Lots
Santa Cruz
1
254.50
Total
68
45,988.892
$769,589.23
In the year *318 1943 the estate sold 13 parcels of real estate containing 5,193.20 acres for $18,780. Subsequent to decedent's death her executors acquired by purchase or exchange five tracts of land containing 1,353 acres. At the end of 1942 the estate possessed 133 tracts of land consisting of 48,956.191 acres. At the end of 1943 it possessed 124 tracts consisting of 43,762.991 acres. In the years 1942 and 1943 all the tracts of land were rented or held for rental. Rentals received in the years 1942 and 1943 were the respective amounts of $22,934.07 and $22,548.08. Rentals and royalties on oil and mineral leases were also received in 1942 and 1943 in the amounts of $1,740.01 and $2,261.62, respectively. Distributions of principal and income to the five residuary devisees from June 26, 1929 to December 31, 1943, were as follows: PRINCIPAL
Prior to 1942
Real Estate
$569,524.37
Cash
129,888.57
1942
Cash
35,000.00
Stock
5,000.00
1943
Total Principal
$739,412.94
INCOME
Prior to 1942
$ 21,592.38
1942
1943
5,023.39
Total Income
$ 27,615.77
Total Principal and Income
$767,028.71
The loss in question relates to the sale of parcels of the Stockton Ranch *319 located in Santa Clara County, which was owned by the decedent at her death and which was valued for estate tax purposes at $625 an acre, or a total of $395,330.62 for 632.529 acres. The Stockton Ranch was rented continuously from the date of death of decedent until the sale of the portions in question in the years 1941, 1942, and 1943. The unsold portions were rented continuously from decedent's death until the end of 1943. On July 1, 1940, the five residuary devisees under the will of decedent, consisting of petitioner, Henry J. Crocker, Marian Phyllis Crocker and C. H. Lamberton as trustee for the two remaining devisees, entered into a lease and option agreement with the city of San Jose whereby they leased to the city for a period of 15 years a portion of the Stockton Ranch containing 483.398 acres. The lease recited that it was subject to the rights of the present lessee, Tony Silvera, whose lease expired on November 1, 1940, and contained an assignment of the devisees' rental interest in the rentals of the Silvera lease to the city. The lease also recited that the estate of the decedent, which embraced the Stockton Ranch, was in process of administration and that the devisees *320 would have prompt distributions of the estate made to them in order to be in a position to carry out the terms of the agreement. The lease further provided that the city was to have options to purchase and acquire title to the acreage in six parcels at the price of $300 an acre, or a total of $145,019.40, the options to be exercised semi-annually in the years 1941 to 1943, inclusive. The lease to Silvera had been executed by the executors of the estate of decedent. On July 20, 1940, petitioner, Henry J. Crocker and Marian Phyllis Crocker, executed an instrument of assignment and consent to distribution, in which it was recited that the parties proposed to petition the court for a partial distribution to them of the Stockton Ranch, and that it was in their best interests that no division or partition of the land be made between them but that the land and the proceeds thereof should be held intact as a unit and managed and administered in trust by C. H. Lamberton. The instrument further provided that the parties assigned and conveyed their several one-fifth interests in the Stockton Ranch to Lamberton, as trustee, and that they requested that distribution of their several interests *321 in the ranch be made to Lamberton, as trustee, "upon the like trusts and with the like powers and duties as in the case of the testamentary trusts whereof the said C. H. Lamberton is the sole remaining trustee." The trusts were to terminate at the end of five years from the date of distribution unless the term were to be extended by the parties. It was also provided that the parties were to have the right to substitute another trustee in the place of Lamberton. The assignment and consent to distribution was filed in the Superior Court on July 31, 1940. On August 14, 1940, the Superior Court made an order for partial distribution of the estate of the decedent. The order recited that the estate was not in a condition to be finally closed and distributed, but that the Stockton Ranch might be distributed to the residuary devisees without loss to creditors or injuries to the estate. The order also recited that the individual residuary devisees had consented to the distribution of the Stockton Ranch to C. H. Lamberton as trustee of their several interests in the land. It was then ordered and decreed that the one-fifth interests in the Stockton Ranch were to be conveyed severally to *322 the trustee "upon the like trusts and with the like powers and duties as in the case of said testamentary trusts." The order provided that the trusts for petitioner, Henry J. Crocker and Marian Phyllis Crocker, would terminate at the end of the five years, unless the term were extended by the beneficiaries, and gave the beneficiaries the right to substitute a successor trustee in the place of C. H. Lamberton. On August 14, 1940, petitioner, Henry J. Crocker and Marian Phyllis Crocker, defined with greater particularity the terms and purposes of their trusts to C. H. Lamberton in that he was told to hold, lease, manage and sell the Stockton Ranch until the termination of the trusts and in the meantime was to pay the beneficiaries annually their several respective shares of the income, reserving sufficient amounts to pay taxes, charges and other expenses incident to the trusts or their administration. The instrument also provided that upon termination of the trusts Lamberton was to pay over to the beneficiaries in accordance with their several respective interests all of the remainder of the corpus and accumulated income. By instrument dated December 24, 1940, and executed by Lamberton *323 as trustee, the parties further defined the July 1, 1940 agreement leasing and giving an option to purchase the Stockton Ranch to the city of San Jose. The city of San Jose exercised its options to purchase under the July 1, 1940, lease and option agreement. The portion of the Stockton Ranch leased to the city of San Jose was divided into six parcels, and two parcels were conveyed to the city by deeds executed by Lamberton as trustee in each of the years 1941 to 1943, inclusive. The cost basis of the Stockton Ranch was $625 an acre, which was the value at the date of decedent's death as approved by respondent for Federal estate tax purposes. The land was sold to the city of San Jose at $300 an acre and a loss of $51,673.70 from the sale of the land was sustained in each of the years 1942 and 1943. Petitioner owned an undivided one-fifth interest in cash of the parcels of the Stockton Ranch which were sold in 1942 and 1943. In the joint income tax return filed by petitioner and her husband for 1942 a deduction of $10,334.74 was claimed, representing petitioner's share of the loss sustained in 1942. The joint return filed for 1943 claimed only $5,167.37 as a deduction for petitioner's *324 share of the loss sustained in that year. Respondent determined that the $10,334.74 and $5,167.37 claimed in the 1942 and 1943 returns as ordinary losses from the sale of property other than capital assets represented losses incurred upon the sale of capital assets as defined by section 117(a) of the Internal Revenue Code. The entire amounts of $10,334.74 and $5,167.37 were disallowed as deductions from gross income for the years 1942 and 1943, respectively, inasmuch as the joint returns revealed other losses during the years from the sale of capital assets in excess of the limitation provided as a deduction in section 117(d) of the Internal Revenue Code. The Stockton Ranch was not at any time used by petitioner for her residence or otherwise used by her for her convenience or pleasure. At the end of the taxable year 1943 and after the sale of the last parcel of the Stockton Ranch, the estate of decedent was still in the process of administration and the executors were still managing the real estate affairs of the estate, excepting the Stockton Ranch. The losses of $10,334.74 sustained on the sale of parcels of the Stockton Ranch *325 in each of the years 1942 and 1943 were ordinary losses. Opinion The respondent determined that the loss sustained in each year 1942 and 1943 from sales of real estate represented losses "incurred from the sale of capital assets as defined in section 117(a) of the Internal Revenue Code. The petition contains one allegation of error, alleging that the determination of the respondent was incorrect. In the petition, it is alleged, as to the amounts of the losses sustained in each year, that the amount was $10,334.74 in 1942 and in 1943, and that petitioner erroneously reported the loss sustained in 1943 in the amount of only $5,167.37. Respondent entered general denials to the pleadings of petitioner in his answer. The only issue raised by the pleadings relates to the question whether the loss in each year represented an ordinary loss, deductible in full under section 23(e)(1) of the Code; or capital losses deductible only to the extent provided in section 117. Since this is the only issue raised by the pleadings and the notice of deficiency, no other issue can be considered. See Warner G. Baird, 42 B.T.A. 970, 976; William H. Joseph, 43 B.T.A. 273, 274; *326 The Maltine Co., 5 T.C. 1265, 1275; Wentworth Manufacturing Co., 6 T.C. 1201, 1208. There is no dispute as to the amounts of the losses sustained upon the sales of realty in 1942 and 1943. The Stockton Ranch has always been rented to farmers for agricultural and grazing purposes. In 1940, the city of San Jose desired to acquire a portion of the said ranch under a fifteen year lease with an option to purchase. Under Section 842 of the Probate Code of California the executors of Mrs. Crocker's estate, who had leased the property to a farmer, could not lease the property for more than ten years, and they could not give an option to purchase. It was necessary for the city of San Jose to deal with the legal owners of the property, and on July 1, 1940, Mrs. Scully and the other devisees leased 483.398 acres of the Stockton Ranch to the city of San Jose for a period of fifteen years with an option to purchase. The said ranch was in the possession of the executors and it was necessary to obtain an order of distribution from the Superior Court in order to have the property freed from the claims of creditors. The individual devisees lived in different cities *327 and an interminable amount of time was being consumed as all of them had to be consulted at every step in the transaction. To remedy this situation the individual devisees, on July 20, 1940, assigned each of their interests in the Stockton Ranch, to C. H. Lamberton, in trust, for the purpose of management and sale. Mr. Lamberton was the surviving trustee of the testamentary trusts created by the will of Mrs. Crocker, the other trustees having resigned. Upon petition duly filed, the Superior Court, on August 14, 1940, ordered distribution of the Stockton Ranch to C. H. Lamberton, as trustee. In the years 1941, 1942 and 1943, the city of San Jose exercised the option to purchase the various parcels of the said Stockton Ranch, and C. H. Lamberton, as trustee for each of the owners, duly executed the deeds therefor. A large loss was sustained upon the sale in each of the years 1942 and 1943 and Mrs. Scully's share of the loss was $10,334.74 in each of the said years. Petitioner contends that since the Stockton Ranch property was rented property, the property was used in the trade or business of petitioner and is not to be considered as "capital assets" pursuant to the provisions of *328 section 117(a)(1) of the Internal Revenue Code. Petitioner relies upon the principle stated in Fackler v. Commissioner, 133 Fed. (2d) 509; N. Stuart Campbell, 5 T.C. 272; Leland Hazard, 7 T.C. 372; and I.T. 3711, 1945 Internal Revenue Cumulative Bulletin, p. 162. Respondent contends that petitioner did not hold the property, her interest therein, in connection with her trade or business. He seeks to distinguish this case from those cited by petitioner on the grounds that the property was inherited and there was only the sale of a single property. He relies upon R. Foster Reynolds, 155 Fed. (2d) 620. The question in the R. Foster Reynolds case involved personalty and did not involve rental property. The holding made in that case is not applicable here. Ordinarily the operation of rental property constitutes a trade or business and the property itself is not a capital asset. Fackler v. Commissioner, supra. Respondent does not dispute this rule, but he contends that the facts of this case make the general rule inapplicable. With that contention we do not agree. The property involved had been rented *329 for many years, even prior to the time petitioner acquired an interest therein. It appears that petitioner was not engaged generally in the business of renting out property to tenants. She was in that business in so far as the Stockton Ranch property was concerned. The property was earning rents under a fifteen year lease and option agreement. Respondent cites no case which affords authority for departing from the rule of the Fackler case, followed in the Leland Hazard case, in which respondent has acquiesced. Internal Revenue Bulletin, December 30, 1946, No. 26, p. 1. The position taken by the respondent in I.T. 3711, supra, supports petitioner's contentions, and makes respondent's argument here on the point that the property was acquired by petitioner through inheritance appear to be in conflict with his own ruling expressed in the above "Office decision." In this connection it is noted that the decedent died in 1929 and that the executors have continued renting property pursuant to the court order of September 25, 1930. Respondent appears to recognize the provisions of the amendment to section 117 in the Revenue Act of 1942 which removed from the definition of capital assets *330 "real property used in the trade or business of the taxpayer," and thereby obviated the distinction which had existed between land and improvements on the land, the land having been treated as a capital asset. He offers no argument on the point that the question presented relates to land which was rented and, therefore, devoted to the production of income. The amendment to the provisions of section 117 applies to the tax years involved here. Since the property involved here was "used in the trade or business of the taxpayer," it is held that it was not a "capital asset" at the time of the sales in 1942 and 1943. Petitioner is, therefore, entitled to deductions in 1942 and 1943 for the entire amount of the loss, $10,334.74 in each year, as an ordinary loss under section 23(e)(1) of the Code. Decision will be entered under Rule 50.