Monadnock Blanket Mills v. Commissioner.
Monadnock Blanket Mills v. Commissioner
Docket No. 16339.
United States Tax Court
1949 Tax Ct. Memo LEXIS 125; 8 T.C.M. (CCH) 660; T.C.M. (RIA) 49178; July 18, 1949
*125 On the facts, held, the amount includable in petitioner's equity invested capital as property paid in for stock under section 718 (a) (2) of the Internal Revenue Code determined. Raymond S. Oakes, Esq., for the petitioner. Paul P. Lipton, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in declared value excess-profits tax and excess-profits tax for the years 1942 and 1943, as follows: Declared Value
Excess-Profits
Excess-Profits
Year
Tax
Tax
1942
$48.00
$2,424.44
1943
44.71
682.37
The sole issue involved is the amount includable in petitioner's equity invested capital as property paid in for stock under section 718 (a) (2) of the Internal Revenue Code. The case was submitted on a stipulation of facts, oral testimony, and exhibits. The facts stipulated are so found. Findings of Fact Petitioner was incorporated August 7, 1909, under the laws of the State of New Hampshire. Its income and declared value excess-profits tax returns for the calendar years 1942 and 1943 were filed with the collector of *126 internal revenue for the district of New Hampshire. It filed excess-profits tax returns for 1942 and 1943 on September 20, 1945 and May 15, 1944, respectively, with the collector of internal revenue for the district of New Hampshire. For many years prior to 1909 a copartnership, doing business under the name of Richardson & Pease and consisting of Edward P. Richardson and Henry H. Pease, manufactured blankets under the trade name of "Monadnock" in Marlboro, New Hampshire. Henry H. Pease died early in 1909. He was survived by his widow, Maria A. Pease, and Charles H. Pease, a son. On August 7, 1909, the surviving partner, Edward P. Richardson, and Charles H. Pease, Fanny L. Applin, Orville E. Cain and L. Irene Turner filed with the Secretary of State of New Hampshire "Articles of Agreement," and on August 9, 1909, these "Articles of Agreement" were filed with the Town Clerk of Marlboro, New Hampshire. The "Articles of Agreement" provide that the name of the corporation shall be Monadnock Blanket Mills. Article 4 provides: "The amount of capital stock to be paid in shall be Sixty thousand dollars ($60,000). Shares to be par value one hundred dollars each." At the first meeting *127 of the incorporators, held on August 18, 1909, the following resolution was adopted: "On motion, duly seconded, it was unanimously voted to buy the business and property of the co-partnership of Richardson & Pease, for the sum of Sixty thousand dollars ($60,000) and to pay therefor with the Capital Stock of the corporation and to assume all outstanding obligations of the co-partnership." On August 26, 1909, Edward P. Richardson and his wife, Nettie A. Richardson, Maria A. Pease (widow of Henry H. Pease), Charles H. Pease and his wife, Mabel C. Pease, executed a quitclaim deed to petitioner. The deed recited a consideration of $60,000. It purported to convey all the property of every description of the firm of Richardson & Pease. The grantee, petitioner, assumed and agreed to pay all the debts, liabilities and obligations of said Richardson & Pease. As of August 26, 1909, the liabilities of the partnership of Richardson & Pease assumed by petitioner consisted of bills payable of $6,897.60 and loans at banks totaling $34,800. Petitioner, on August 26, 1909, issued 600 shares of its common stock, as follows: Edward P. Richardson
299 shares
Maria S. Pease
100 shares
Charles H. Pease
199 shares
Fanny L. Applin
2 shares
*128 Under date of August 26, 1909, Charles H. Pease, treasurer, and Edward P. Richardson, Charles H. Pease and Fanny L. Applin executed and filed with the Town Clerk of Marlboro, New Hampshire, the following certificate: "We, the subscribers, being the treasurer and a majority of the directors of the Monadnock Blanket Mills on oath depose and say that the whole amount of the capital fixed and limited by said corporation has been paid in." The first balance sheet shown on petitioner's books is dated November 1, 1909, and is as follows: Assets
Stock on hand and in process
$ 6521 68
Manufactured goods. Less adv.
2311 07
Cash in Office & Banks
4190.12
Cash on call with Agents
1681.65
5871 77
Bills receivable
238 67
Real Estate, Mills, Machinery
Tenements - Water rights
65000 00
Goodwill & Trade name
25000 00
104943 19
Liabilities
Capital stock
60000 00
Bills payable
6897 60
Loans at Banks
34800 -
Profit & Loss
3245 59
104943 19
In computing its excess-profits tax credit based on invested capital, petitioner claimed the amount of $60,000 as money paid in for stock. The respondent determined that the net value of property *129 paid in for stock was $20,924.09, computed as follows: Property paid for stock
Stock on hand and in process
$ 6,521.68
Manufactured goods
2,311.07
Cash
5,871.77
Bills Receivable
238.67
Real Estate, Mill, Machinery
47,678.50
Total
$62,621.69
Liabilities: Bills payable
$ 6,897.60
Notes payable, bank
34,800.00
41,697.60
Net value of property paid in
$20,924.09
The fair market value of the tangible assets purchased by petitioner in 1909 was $79,943.19. The net value of the property paid in for stock was $38,245.59. Opinion The sole contested issue relates to the amount includable in petitioner's equity invested capital as property paid in for stock under section 718 (a) (2) of the Internal Revenue Code. Section 718 (a) (2) provides that property acquired for stock shall be included in the computation of equity invested capital at an amount equal to its basis (unadjusted) for determining loss upon its sale or exchange. Section 113 (a) of the code provides: "Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; * * *." Certain exceptions mentioned are not here applicable. *130 Therefore the petitioner's basis is cost. Maltine Co., 5 T.C. 1265, 1272. Petitioner concedes its cost is the fair market value of the assets less the liabilities. The question, therefore, is the fair market value of the assets acquired for the issuance of petitioner's shares of its capital stock. In his computation the respondent excluded good will shown on petitioner's balance sheet in the amount of $25,000. He allowed the amount of $47,678.50 of an aggregate amount of $65,000 listed in the petitioner's balance sheet as "Real Estate, Mills, Machinery Tenements - Water rights." These two items constitute the only ones in controversy. At the time the partnership was dissolved by the death of Henry H. Pease, in the Spring of 1909, the balance sheet of the partnership showed "Mills, Machinery & Real Estate $47,678.50." Good will was not carried as an asset. The respondent contends that the difference between the $47,678.50 and the $65,000 attributed to Real Estate, Mills, Machinery, etc., was a mere write up of the fixed assets. We do not agree. We do not have here the mere transfer of the assets of a going partnership to a corporation, but a sale of properties of a dissolved *131 partnership by the then owners, i.e., the surviving partner and the heirs of the deceased partner, to a new corporation organized by them. Such parties are not to be limited by the value of those fixed assets as carried on the books of the dissolved partnership, but are entitled to the fair market value of those assets at the time of the sale and transfer to the corporation. All the parties to the original transaction in 1909 are deceased except Orville E. Cain, one of the original incorporators and the attorney for the parties who were then the owners of the property. Cain was 79 at the time his deposition was taken. He testified that he advised the parties, since the corporation was to issue its stock for property, that, in order to comply with the laws of New Hampshire, stock could be issued at the fair market value of the property exchanged for stock. He further testified that the value as set was fixed after adjustment among the then owners. The parties, whose interest in the property was adverse, having agreed upon the fair market value of the fixed assets to be transferred to petitioner, we see no logical basis for concluding that the fair market value of the fixed assets was *132 less than that which the parties had themselves fixed. We have, therefore, found as a fact that the fair market value of the fixed assets exchanged for stock is the amount of $79,943.19, as shown on the first balance sheet of petitioner. With respect to the item of $25,000 listed on the balance sheet as "Goodwill & Trade name," we think the situation is somewhat different. Equity invested capital is a statutory concept. LaBelle Iron Works v. United States, 256 U.S. 377. Regulations 112, sec. 35.718-1, provide in part as follows: "If stock having no established market value is issued for intangible property, and it is necessary to determine the fair market value of such property, the following factors, among others, may be taken into consideration in determining such value: (a) The earnings attributable to such intangible assets while in the hands of the predecessor owner; and (b) any cash offers for the purchase of the business, including the intangible property, at or about the time of its acquisition. * * *" No evidence was presented to meet either of the factors suggested by the regulations. The records kept by the copartnership of Richardson & Pease were very *133 meager. The balance sheets reflected no item under the heading "Good Will and Trade Name." Petitioner presented no evidence of the value of good will. Petitioner relies upon the fact that, in compliance with the New Hampshire law, a certificate was duly filed, stating that the whole amount of the capital fixed and limited by said corporation had been paid in; and the further fact that the deed of transfer recited the consideration paid was $60,000. We think such evidence is insufficient to establish the fair market value of good will purchased with petitioner's stock, within the purview of section 718 (a) (2) of the code and the regulations adopted pursuant thereto. In view of the foregoing, we affirm the respondent's action in excluding $25,000 invested capital on account of good will or trade name acquired for petitioner's stock. Property having a fair market value of $79,943.19 was transferred to petitioner in 1909 in exchange for its capital stock. Petitioner assumed liabilities in the total amount of $41,697.60. We, therefore, conclude and hold that in computing petitioner's excess-profits tax credit based on invested capital, the net value of property paid in for stock on *134 the incorporation of petitioner is the amount of $38,245.59. Decision will be entered under Rule 50.