MILLARD J. JOHNSON and SHIRLEY J. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 27912-81.
United States Tax Court
T.C. Memo 1984-305; 1984 Tax Ct. Memo LEXIS 367; 48 T.C.M. (CCH) 289; T.C.M. (RIA) 84305; June 18, 1984. Ernest M. Fleischer and Richard Monaghan, for the petitioners. Alan M. Jacobson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' 1976 and 1977 Federal income taxes in the amounts of $870.92 and $10,942.81, respectively. After concessions, the issues for decision are: (1) Whether petitioners are entitled to deduct moving expenses incurred during 1976 [1] and 1977 pursuant to section 217; [2] (2) whether petitioners' travel expenses paid or reimbursed by the First National Bank of Centralia in 1976 and 1977 and by Boone County *369 Insurance Agency, Inc., in 1977 constitute taxable income to petitioners, and, if so, whether such travel expenses are deductible pursuant to section 162 or section 212; and (3) whether a payment of moving expenses by First National Bank of Centralia during 1977 is compensation to petitioners pursuant to section 82. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Millard J. Johnson (hereinafter petitioner) and Shirley J. Johson (hereinafter Shirley), husband and wife, resided in Centralia, Missouri, when they filed their petition in this case. Petitioners timely filed their joint Federal income tax returns for 1976 and 1977 with the Internal Revenue Service. During 1976 and 1977, petitioners owned 100 percent of the outstanding common stock of Boone County Insurance Agency (hereinafter Boone). Boone was a corporation organized under the laws of the State of Missouri which was operated *370 as an insurance agency and as a bank holding company within the meaning of the Bank Holding Company Act of 1956, 12 U.S.C. sec. 1841 (a). Boone owned 80.65 percent of the outstanding common stock of First National Bank of Centralia, Missouri (hereinafter First National). During 1976 and 1977, petitioner was chairman of the board of First National and president of Boone. He was also chief executive officer of First National until he resigned that position at the board of directors meeting in July 1976. Shirley was vice president and secretary of Boone, and president and secretary to the board of directors of First National. In approximately 1975, petitioner became interested in selling First National and acquiring a Florida bank. At that time it was rumored that the primary employer in Centralia, Chance Manufacturing Company, was for sale. [3] Petitioner believed that First National's success was directly related to the continued prosperity of the Chance Manufacturing Company, and he wanted to dispose of First National because of the uncertainty that surrounds a change in ownership of a town's primary employer. Petitioner was interested in obtaining *371 a Florida bank because he believed that the Florida market was growing rapidly and offered a greater growth potential than did the Missouri market. Consequently, petitioner inquired among his Florida banking friends about the possibility of acquiring a Floria bank, and he began to look at several different banks. On March 25, 1976, petitioners received a written offer to purchase petitioners' entire interest in Boone and First National from a group of four investors. [4] On April 29, 1976, petitioner and John H. Lucas, one of the four investors and president of the Kansas City Bank and Trust Company, signed a "letter of intent" with respect to the sale of First National. The letter of intent was a nonbinding agreement which generally indicated that Mr. Lucas and his associates intended to acquire all shares of Boone and First National for a specified sum, the terms of which were subject to negotiation. This was not a binding contract of purchase. In fact, Lucas and his associates continued to negotiate for the purchase of petitioner's *372 financial interests in Boone and First National, but the parties failed to reach an agreement during the years in issue. [5]
On July 28, 1976, petitioners, anticipating that First National would be sold, sold their personal residence in Centralia and transferred their household furniture and personal belongings to a rented condominium, and later to a recently completed new residence in Satellite Beach, Florida. Petitioners paid the $3,550.20 cost of moving to Florida during 1976. Both the condominium and the house contained an office where petitioners handled all business related to Boone and First National. Throughout the years in issue, a majority of petitioners' work *373 related activity was devoted to the affairs of First National. Normally, petitioner spent each morning reviewing loan documents and financial statements, because he was primarily responsible for all of First National's commercial loans throughout the years in issue. Most of petitioner's afternoons were spent with friends in the banking business and generally trying to make business contacts with other people in the Florida banking industry who were aware of banks for sale. In fact, petitioner looked at a total of 4 banks during the 14 months that he lived in Florida. During 1976 and 1977, petitioners telephoned bank personnel daily, and Shirley continued to arrange the work and vacation schedules for bank employees. In addition, she assisted Boone's bookkeeper on bookkeeping entries, payment of bills, and general administrative matters. In November 1976, when it became clear that the bank had not been sold, petitioner and Shirley began to attend First National's monthly board of directors meetings. First National paid the majority of expenses incured by petitioners to attend the monthly meetings. The following chart shows petitioners' travel expenses either paid, or reimbursed, *374 by Boone and First National during 1976 and 1977: Year
Boone
First National
1976
0
$ 388.00
1977
$690.68
12,186.10
At about the same time that petitioner began to attend board of directors meetings, he also began to more closely monitor all of First National's outstanding loans because substandard loans had reached 26 percent of capital. As a result of this high number of substandard loans, the regional administrator of banks notified First National that it wanted petitioner either to take direct control of the bank or to dispose of his interest therein. During October 1977, petitioners sold their home in Satellite Beach, and moved back to Missouri. The cost of moving was § 5.093. Boone and First National each paid and deducted one-half of the cost. As a result of a mathematical error in the original invoice, a second bill in the amount of $100.98 was received and paid by First National. On their 1977 Federal income tax return, petitioners included in miscellaneous income $5,087 in moving expense reimbursements, and they deducted $5,093 in moving expenses. [6] Petitioners did not include the additional $100.98 paid by First National in the income *375 reported on their 1977 Federal income tax return. In the notice of deficiency, respondent determined that petitioners' 1976 and 1977 moving expenses are not deductible because petitioners failed to meet the requirements of section 217. Respondent further determined that petitioners' 1976 and 1977 travel expenses paid or reimbursed by Boone and First National constituted additional taxable income pursuant to section 61, and that the 1977 moving expense reimbursed by First National constituted additional taxable income pursuant to section 82. OPINION The first issue for decision is whether petitioners are entitled to deduct the expenses of moving from Centralia to Florida during 1976 and from Florida to Centralia during 1977, pursuant to section 217. Section 217(a) allows a deduction, with limitations not relevant herein, for "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee * * * at a new principal place of work." The term "commencement" is defined in section 1.217-2(a)(3), Income Tax Regs., to include "the beginning of work by *376 a taxpayer for the same employer * * * in the same trade or business at a new location." Section 1.217-2(c)(3), Income Tax Regs., provides that: "A taxpayer's 'principal place of work' usually is the place where he spends most of his working time. The principal place of work of a taxpayer who performs services as an employee is his employer's plant, office, shop, store, or other property." For purposes of section 217, an employee means any individual performing services, if the relationship between him and the person for whom he performs them is the legal relationship of employer and employee. Sec. 1.217-2(a)(1), Income Tax Regs.; sec. 31.3401(c)-1(a), Employment Tax Regs. An officer of a corporation generally is considered an employee, while a director of a corporation acting in this capacity as such is not an employee. Sec. 1.217-2(a), Income Tax Regs.; sec. 31.3401(c)-1(f), Employment Tax Regs.
Respondent argues that petitioners may not deduct the expenses of moving from Centralia, Missouri, to Satellite Beach, Florida, during 1976 because petitioners did not commence work at a new principal place of work during 1976. Similarly, respondent argues that the moving expenses incurred *377 in returning to Centralia, Missouri, during 1977 are not deductible because petitioners were returning to their original principal place of work. Petitioners, on the other hand, offer two interrelated arguments to support their contention that they moved their principal place of work from Centralia to Satellite Beach during 1976, and that they again moved their principal place of work from Satellite Beach to Centralia during 1977. First, petitioners argue that during 1976 they were attempting to acquire a bank on behalf of Boone and that, because Florida banks were selling quickly during that period, petitioners needed to be present in Florida. Second, petitioners maintain that during 1976 Florida became their principal place of employment because they performed work for First National during the mornings and for Boone during the afternoons while located in Florida. With respect to petitioners' first agument, we do not believe that petitioners were acting as employees of Boone, or on behalf of Boone, when they were seeking to acquire a Florid bank dring 1976. Petitioners have failed to provde any documentary evidence which indicates that Boone intended to acquire a Florida *378 bank. Normally, the sale of a major asset and subsequent acquisition of an equally large asset would be expected to require some authorization by Boone's board of directors, but petitioners presented no documentary evidence to support their position.Moreover, had petitioner been employed by Boone specifically to acquire a Florida bank, either a board resolution authorizing petitioner's actions, or an employment contract detailing the terms and conditions of petitioner's employment would have amply demonstrated the existence of a valid employer-employee relationship. Petitioner failed to provide any documentary evidence which would suggest that he was acting on behalf of Boone when he moved to Florida in 1976. Furthermore, we believe that petitioners intended to dispose of their interest in Boone prior to their move to Florida. During March and April of 1976, petitioners entered into negotiations for the sale of all of their financial interests in Centralia, Missouri. By letter dated March 25, 1976, a group of four investors offered to purchase petitioners' interest in Boone and all of its assets including the stock of First National. Thereafter, on April 29, 1976, petitioners *379 received a "letter of intent" in which the investors stated their intention, subject to subsequent negotiation, again to acquire all shares of Boone and First National held by petitioners. Petitioners assert that these letters merely evidence the investors' negotiating position, and that petitioners only intended to sell First National and never intended to sell Boone. [7] However, if petitioners never intended to sell their stock in Boone, they easily could have made this clear following receipt of the investors' March 25, 1976, offer to purchase the stock of Boone. Instead, petitioners continued negotiations with the investors for the sale of Boone. This conduct clearly suggests that petitioners in fact contemplated the sale of this entity during 1976. Petitioners' second argument is that establishment of an office in Satellite Beach from which they conducted all business *380 related to First National and Boone entitles them to deduct moving expenses during 1976. Petitioners base their argument on section 1.217-2(a)(3), Income Tax Regs., which provides that "the commencement" of employment includes "the beginning of work by a taxpayer for the same employer * * * in the same trade or business at a new location." Petitioners apparently argue that they are working for the same employer (First National and/or Boone) at their newly opened office in Florida. However, petitioners' situation clearly does not fall within the ambit of this regulation. Petitioners' move to Florida simply did not change their principal place of employment. Section 1.217-2(c)(3)(i), Income Tax Regs; provides that the principal place of work of a taxpayer who performs services as an employee is his employer's plant, office, shop, store, or other property. As employees of First National and controlling equity owners and employees of Boone, petitioners' principal places of work were the bank's and insurance agency's offices in Centralia, Missouri, where the business conducted by these entities was carried out. Petitioners' daily long distance communications by mail and telephone *381 with First National and Boone clearly demonstate that Centralia, not Satellite Beach, was their principal place of work throughout the years in issue. Since the expenses of moving from Centralia to Satellite Beach were not incurred by petitioners in connection with their commencement of work at a new principal place of work, they are not deductible. Similarly, petitioners' move from Satellite Beach back to Centralia during 1977 is not deductible because they were merely returning to their principal place of work. Our conclusion with respect to this first issue is determinative of issue two. Generally, a taxpayer's principal place of work for section 217 purposes is the same as the taxpayer's principal place of business for section 162 purposes. Sec. 1.217-2(c)(3)(i) and (iii), Income Tax Regs.; cf. Schweighardt v. Commissioner,5 T.C. 1273, 1277 (1970). Since we have determined that Centralia was petitioners' principal place of work during 1976 and 1977, the expenses incurred by petitioners in traveling from Satellite Beach to Centralia to attend board of directors meetings are nondeductible personal expenses.[8] Sec. 262; sec. 1.262-1(b)(5), Income Tax Regs. *382 To the extent these expenses were paid or reimbursed by First National or Boone, they must be included in petitioners' income.
Finally, First National's payment of petitioners' moving expenses during 1977 is compensation to petitioners under section 82, since section 82 includes in gross income any amount received as payment for, or reimbursement of, employment related expenses of moving from one residence to another. To reflect the foregoing, *383 Decision will be entered for the respondent.
Footnotes
1. By amended petition petitioners claimed a moving expense deduction for their 1976 taxable year which had not previously been claimed on their 1976 Federal tax return. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Chance Manufacturing Company, through its Profit Sharing Trust, owned approximately 15 percent of First National's stock. In 1978, Chance was sold.↩
4. These investors also negotiated to purchase petitioners' 95 percent stock interest in First National Building Corporation (FNBC). The parties have presented no evidence regarding the business conducted by FNBC, nor petitioners' relationship with FNBC other than as majority shareholders. Accordingly, except where relevant, we have avoided all reference to FNBC. ↩
5. Sometime during late 1979 or early 1980, petitioners sold their interests in Boone and First National to a different investiment group.↩
6. The discrepancy between these figures was not explained.↩
7. Petitioners also argue that a sale of the stock of Boone during 1976 would have been detrimental from a tax point of view. Petitioners presented no evidence as to why the sale of Boone would have generated adverse tax consequences, and in fact petitioners sold their entire interest in Boone during 1980.↩
8. Our decision that Centralia was petitioners' tax home throughout the years in issue does not, under the facts of this case, entitle petitioners to claim an "away from home deduction" for the expenses they incurred while living in Satellite Beach, because petitioners expected to remain in Florida for an indefinite as opposed to temporary period of time. See Peurifoy v. Commissioner,254 F. 2d 483, 486 (4th Cir. 1957), affd. 358 U.S. 59 (1958). Furthermore, petitioners incurred no duplicate living expenses while residing in Satellite Beach, and permitting them a deduction would not further the purpose of the "away from home" exception. See Tucker v. Commissioner,55 T.C. 783, 786↩ (1971).